[No. 14228-1-III.   Division Three.   November 2, 1995.]

*In the Matter of the Application for Relief From Personal Restraint of* DAGOBERTO GALVEZ, *Petitioner.*

*Dagoberto Galvez*, pro se.

*Christine O. Gregoire, Attorney General*, and *Marion E. Morgenstern, Assistant*, for respondent.

SCHULTHEIS, J. — Dagoberto Galvez seeks relief from personal restraint imposed as a result of his placement in administrative segregation. He is currently serving his sentence for his conviction of first-degree assault. He contends: his constitutional rights were violated (1) when he was placed in administrative segregation; and (2) because he was not allowed to earn "earned time" credits while in administrative segregation. This court denied his petition; however, the Department of Corrections (DOC) requests this court publish its decision. The request is granted.

■■ Mr. Galvez' first contention is without merit. RAP 16.4 provides relief may be granted only if the petitioner is under restraint and the restraint is unlawful. Here, Mr. Galvez is no longer in administrative segregation. Furthermore, inmates do not have a constitutional right or liberty interest in remaining in the general prison population. *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S. Ct. 864, 869-70, 74 L. Ed. 2d 675 (1983). An inmate's transfer to administrative segregation is not protected by the due process clause. *In re Dowell*, 100 Wn.2d 770, 773, 674 P.2d 666 (1984).

Second, Mr. Galvez requests adjustment of his earned early release date contending he has lost good conduct time by virtue of his placement in administrative segregation and thus his constitutional due process and equal protection rights have been violated. DOC Policy No. 350.130 provides inmates are not eligible to earn earned time credits and will fail to earn earned time credits if placed in administrative segregation for more than twenty days in one month, unless that placement is for protective custody reasons. The issue presented is whether inmates have a constitutionally protected liberty interest in *earning* early release time credits.

■ Inmates do not have an inherent federal constitutional interest in amassing good time credits or earning early release. *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). However, a liberty interest may also be created by state law. *Hewitt*, 459 U.S. at 466; *Toussaint v. McCarthy*, 801 F.2d 1080, 1089 (9th Cir. 1986), *cert. denied*, 481 U.S. 1069 (1987). To create such an interest, state law must direct that " 'a given action will be taken or avoided only on the existence or nonexistence of specified substantive predicates.' " *Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993) (quoting *Toussaint*, 801 F.2d at 1094)); *In re Cashaw*, 123 Wn.2d 138, 144, 866 P.2d 8 (1994). There must be relevant, mandatory language that explicitly directs a decisionmaker that if specific substantive predicates are present, a particular outcome must fol-

low. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 109 S. Ct. 1904, 1909-10, 104 L. Ed. 2d 506 (1989); *Baumann v. Arizona Dep't of Corrections*, 754 F.2d 841, 844 (9th Cir. 1985); *Cashaw*, 123 Wn.2d at 144.

■ Here, RCW 72.09.130 is the statutory source of Washington's earned early release time system and provides in part:

> The department shall adopt a system providing incentives for good conduct and disincentives for poor conduct. The system *may include* increases or decreases in the degree of liberty granted the inmate within the programs operated by the department and recommended increases or decreases in the number of earned early release days that an inmate can earn for good conduct and good performance.

(Emphasis added.) The supreme court found this section to be "permissive and not mandatory upon the Department." *Dowell*, 100 Wn.2d at 774. Also, the structure of Washington's earned early release time system is defined in RCW 9.94A. RCW 9.94A.150(1) provides in pertinent part:

> Except as otherwise provided for in subsection (2) of this section, the term of the sentence of an offender committed to a correctional facility operated by the department, *may be reduced by earned early release time* in accordance with procedures that shall be developed and promulgated by the correctional agency having jurisdiction in which the offender is confined.

(Emphasis added.) This statute gives the various correctional facilities plenary authority over good time awards for offenders under their jurisdiction. *In re Williams*, 121 Wn.2d 655, 661, 853 P.2d 444 (1993). RCW 9.94A.150(1) "allows correctional facilities to reduce the sentences" of inmates, *Williams*, 121 Wn.2d at 658, and gives them control over the award or denial of good time of inmates under their jurisdiction. *Williams*, 121 Wn.2d at 662. The broad and permissive language in these statutes does not meet the requirements necessary to create a liberty interest.

*In re Anderson*, 112 Wn.2d 546, 548, 772 P.2d 510, *cert. denied*, 493 U.S. 1004 (1989) and *In re Johnston*, 109 Wn.2d 493, 496, 745 P.2d 864 (1987) are not on point. Those cases involved the taking away of good time credits already earned, not the issue involved in this case, which is whether there is a constitutional right to earn good time credits. This case is more akin to *In re Ayers*, 105 Wn.2d 161, 164, 713 P.2d 88 (1986), which held petitioners have no liberty interest in the potential of parole.

We hold neither Washington statutes nor policies governing earned early release time contain the mandatory language necessary to establish a state-created liberty interest.

■■ Mr. Galvez also contends the distinction in DOC Policy No. 350.130 between those in administrative segregation for protective reasons and those placed there because they are a potential threat to prison security violates his equal protection rights. This contention is without merit. "The equal protection clauses of both the state and federal constitutions require that 'persons similarly situated with respect to the legitimate purpose of the law receive like treatment.'" *In re Runyan*, 121 Wn.2d 432, 448, 853 P.2d 424 (1993) (quoting *Harmon v. McNutt*, 91 Wn.2d 126, 130, 587 P.2d 537 (1978)). Mr. Galvez is not similarly situated to protective custody inmates. Where persons of different classes are treated differently, there is no equal protection violation. *Forbes v. City of Seattle*, 113 Wn.2d 929, 943, 785 P.2d 431 (1990). However, even if Mr. Galvez were similarly situated to inmates in administrative segregation for protective concerns, his equal protection claim fails because the distinction in classification is constitutional. It is rationally related to a legitimate governmental purpose, *see In re Borders*, 114 Wn.2d 171, 176, 786 P.2d 789 (1990), that is, maintaining security within the prison by serving as a disciplinary tool and deterrent to those inmates who are administratively segregated for behavioral reasons.

For the above reasons, this petition is denied. This petition being denied, the motion for in camera review of confidential information is also denied.

THOMPSON, C.J., and SWEENEY, J., concur.