IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RYAN FRAZIER, | ) | |
| | ) | No. 35586-1-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEVE QUICK and JANE DOE QUICK, | ) | UNPUBLISHED OPINION |
| husband and wife, and OROVILLE | ) | |
| SCHOOL DISTRICT NO. 410, | ) | |
| | ) | |
| Respondents. | ) | |

KORSMO, J. — Ryan Frazier appeals from the trial court's rejection of his claims against the Oroville School District (OSD) and its administrators arising from the decision not to tender him a new teaching contract. Concluding that the court did not err by denying him a writ or in granting summary judgment, we affirm.

FACTS

Mr. Frazier was hired as a provisional teacher to teach social studies for the 2013-14 school year. Near the end of the school year, Frazier's first as a teacher, OSD superintendent Steve Quick found probable cause for nonrenewal of Frazier's teaching contract, citing to failure to create lesson plans, failure to attend staff meetings, and a defiant attitude during his meeting with Quick.

Frazier was well liked by his students and considered by the junior/senior high school principal, Kristin Sarmiento, to be a good teacher. She evaluated him three times during the school year in accordance with state standards across multiple categories of a teacher's performance. His evaluations reported back grades of "Basic", "Proficient", and "Distinguished"; his overall final grade was Basic. Principal Sarmiento recommended that he be retained. However, she directed Frazier to use the online planning program and indicated that she needed to be able to see his lesson plans.

Superintendent Quick delivered a letter to Frazier on May 14, 2014, finding probable cause for nonrenewal of Frazier's teaching contract. The letter identified: (1) lack of planning, (2) a cynical and defiant attitude evidenced in evaluation documents, and (3) failure to attend staff meetings. On May 27, the OSD Board of Directors held a meeting. Frazier sought to speak at the meeting, but was denied the opportunity.

The next day, Quick, Frazier, and union representative Linda Colvin met. Frazier displayed evidence of his work, but did not present any lesson plans. Frazier told Quick he did not have written lesson plans because he planned in his head. He also told Quick that he did not attend staff meetings because they were a waste of time.

On June 5, 2014, Quick recommended that the Board of Directors not renew Frazier's contract. Frazier was advised that he could submit written information before the vote. He wrote a "letter of protest" to the board informing them that he would not submit evidence, still desired to speak in person, accused Quick of conducting a vendetta,

2

and attached the complete lyrics to the Bob Dylan classic, "*The Times They Are A-Changin'*." On June 23, the board voted not to renew the contract.

Frazier sued Quick, alleging tortious interference with contract, negligent infliction of emotional distress (NIED), intentional infliction of emotional distress (IIED), negligence, defamation, and ultra vires conduct. He later amended his complaint to assert claims of NIED, IIED, negligence, and defamation against OSD. He also alleged that the evaluation of his contract was arbitrary and capricious.

The defendants moved for summary judgment, but the court denied the requests. The defendants moved for reconsideration. In its order on reconsideration, the trial court ruled that a factual question existed whether the board acted arbitrarily and capriciously. The court also ruled that the board did not act maliciously or intentionally, or with the intent to inflict intentional harm or emotional distress. It then dismissed the ultra vires claim against Frazier and the defamation and IIED claims against both defendants.

Prior to trial, the defendants filed motions in limine to exclude certain evidence. In ruling on the in limine motions, the court noted that its order on reconsideration was not artfully drafted and explained that the issue of arbitrary and capricious conduct would be decided by the bench, not a jury. The jury was excused. A bench trial was then conducted between May 23 and May 26, 2017. In a ruling issued in August, the court

3

dismissed all remaining claims, ruling that the decision by OSD was not arbitrary, capricious, or illegal, and declined to issue a constitutional writ.

Frazier appealed to this court. A panel heard oral argument of the case.

ANALYSIS

This appeal raises procedural and substantive challenges to the summary judgment and pretrial proceedings, as well as substantive challenges to the trial. In backwards order, we first address the trial before turning to the pretrial rulings.

*Trial*

The court considered the applicability of a writ of certiorari in the bench trial, ultimately declining to issue it. The court also dismissed the NIED and negligence claims against both defendants, the tortious interference claim against Quick, and also dismissed, for a second time, the ultra vires claim. We address the writ argument first before turning to the other contentions.

The hiring, retention, and release of provisional teachers is governed by statute. In particular, RCW 28A.405.220(1) provides that all who have served as certificated teachers for less than three years "shall be subject to nonrenewal of employment contract." The process of nonrenewal is prescribed in the next paragraph:

> In the event the superintendent of the school district determines that the
> employment contract of any provisional employee should not be renewed
> by the district for the next ensuing term such provisional employee shall be
> notified thereof in writing on or before May 15th preceding the
> commencement of such school term . . . which notification shall state the

4

reason or reasons for such determination.  Such notice shall be served upon the provisional employee . . . .  The determination of the superintendent shall be subject to the evaluation requirements of RCW 28A.405.100.[1]

RCW 28A.405.220(2).

In the event of a nonrenewal notice:

Every such provisional employee so notified, at his or her request made in writing and filed with the superintendent of the district within ten days after receiving such notice, shall be given the opportunity to meet informally with the superintendent for the purpose of requesting the superintendent to reconsider his or her decision.  Such meeting shall be held no later than ten days following the receipt of such request . . . .  At such meeting the provisional employee shall be given the opportunity to refute any facts upon which the superintendent's determination was based and to make any argument in support of his or her request for reconsideration.

RCW 28A.405.220(3).

From there, "the superintendent shall either reinstate the provisional employee or shall submit to the school district board of directors for consideration at its next regular meeting a written report recommending that the employment contract of the provisional employee be nonrenewed and stating the reason or reasons therefor."  RCW 28A.405.220(4).

In addition to the superintendent's report, the Board of Directors "shall consider any written communication which the provisional employee may file with the secretary of the board at any time prior to that meeting."  *Id*.  The Board of Directors then has ten

---

[1] RCW 28A.405.100 describes the process for evaluating teachers.

days following the meeting to notify the employee in writing of its decision. RCW 28A.405.220(5). In the event of nonrenewal, the decision of the Board of Directors "shall be final and not subject to appeal." *Id.*

This court construed these statutes in the case of a provisional teacher who was not renewed due to conduct issues in *Petroni v. Board of Directors of Deer Park School District No. 414*, 127 Wn. App. 722, 113 P.3d 10 (2005). There we rejected an argument, also made here by Mr. Frazier, that the teacher evaluation process of RCW 28A.405.100 was the sole basis for nonrenewal of provisional teachers. *Id.* at 730-731. The legislature intended a broader basis for nonrenewal when it used the word "reasons" rather than apply the probable cause standard of .100. *Id.* at 732 (citing *Meyers v. Newport Consol. Joint Sch. Dist. No. 56-415*, 31 Wn. App. 145, 148, 639 P.2d 853 (1982)).

Although .220(5) provides that there is no "appeal" from the nonrenewal determination, the constitutional writ of certiorari is always available to allow a court to ensure that proceedings were within the authority of the "lower tribunal." *Petroni*, 127 Wn. App. at 726. A writ may be granted if the tribunal's decision was "illegal, arbitrary, or capricious." *Id.* This court reviews the trial court's writ decision for abuse of discretion—i.e., did the court have tenable reasons for its ruling. *Id.*; *Bridle Trails v. City of Bellevue*, 45 Wn. App. 248, 252, 724 P.2d 1110 (1986). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Here, the nonrenewal process followed the statutory directives. Quick gave Frazier a written notice and then met with him (along with the union representative) the following day. After that, Quick asked the OSD Board of Directors to not renew Frazier. They allowed the submission of written materials in accord with the statutory process.[2] After considering the submissions, they acted. RCW 28A.405.220(2)-(5). OSD followed the process dictated by the statutes and committed no procedural error in its nonrenewal decision.

Similarly, there were tenable reasons for the nonrenewal decision. Frazier was a new teacher who failed to provide written lesson plans for administrators despite requests that he do so.[3] He responded to their concerns by explaining his dislike for staff meetings and sending nonresponsive materials such as song lyrics in lieu of evidence or argument. He may well have not been enamored by OSD administration, but he can hardly complain if they felt the same way about him.

---

[2] Mr. Frazier contends that the board was required to allow him to present oral remarks at the board meeting. However, the statute only requires that the board consider written materials. RCW 28A.405.220(4). No authority compels the board to accept live testimony or argument.

[3] Mr. Frazier argues that evaluating him based on the on-line lesson planner violated the collective bargaining agreement his union had with the district. If true, his remedy was to seek relief under the bargaining agreement. Nonetheless, he does not argue that the district could not require him to provide written lesson plans, something that he simply refused to do. The recommendation for nonrenewal was based on the absence of lesson plans rather than non-use of the on-line planner, and was not based on any *evaluation*.

In short, the trial judge had very tenable reasons not to issue the constitutional writ. There was no evidence of arbitrary or capricious action by the school district. The court did not err by denying the writ. The finding of nonarbitrary action also figures prominently in the dismissal of the other claims.

The trial court dismissed the ultra vires and tortious interference claims against Quick at trial, ruling that Quick, as agent for OSD, was party to the contract and did not constitute a third party who could interfere with the contract. The court also concluded that Quick acted within the scope of his employment and could not have been acting ultra vires. Both claims directed at Quick were based on allegations that he had violated Mr. Frazier's due process rights related to his employment contract. As noted above, none of Mr. Frazier's statutory rights were violated. Instead, Quick and the board followed the statutory process. The nonrenewal decision was not arbitrary and capricious. Thus, the allegation that Mr. Quick somehow violated those rights to Mr. Frazier's detriment is without support in the record. The trial court correctly dismissed these claims against Quick.

At the conclusion of trial, the court also dismissed the negligence and NIED claims against both defendants. This ruling, too, was well supported by the record. The court reasoned that neither Quick nor the board owed any duty to Frazier to avoid negligent behavior relating to employment. Clerk's Papers at 31.

This ruling was correct. A NIED claim is actionable in an employment setting. *Chea v. Men's Wearhouse, Inc.*, 85 Wn. App. 405, 412, 932 P.2d 1261 (1997). To recover on a NIED claim, a plaintiff must establish the existence of a duty, breach of that duty, proximate cause, and objective symptomology of distress. *Kumar v. Gate Gourmet, Inc.*, 180 Wn.2d 481, 505, 325 P.3d 193 (2014). However, we have previously recognized that an employer has no duty to avoid causing emotional distress in the workplace. *Bishop v. State*, 77 Wn. App. 228, 234-235, 889 P.2d 959 (1995). The termination of an at-will employee will not support a NIED claim in the absence of a clear violation of a public policy. *Lords v. N. Auto. Corp.*, 75 Wn. App. 589, 595, 881 P.2d 256 (1994).

Here, Mr. Frazier did not demonstrate a negligent violation of a clear public policy.[4] The court did not err in rejecting the negligence and NIED claims.

*Summary Judgment*

Mr. Frazier also argues that the trial court erred by reconsidering and dismissing at summary judgment his ultra vires and IIED claims.[5] Because the ultra vires claim was later dismissed at trial, we need not consider it again here. The IIED claims failed under the well settled standards governing summary judgment.

---

[4] He also did not provide evidence of objective symptomology that demonstrated his emotional distress. *Hunsley v. Giard*, 87 Wn.2d 424, 433, 436, 553 P.2d 1096 (1976).

[5] He does not challenge the dismissal of the defamation claims.

9

When considering an appeal from a summary judgment order of dismissal, an appellate court will review the ruling de novo and consider the same evidence heard by the trial court, viewing that evidence in a light most favorable to the party responding to the summary judgment. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). If there is no genuine issue of material fact, summary judgment will be granted if the moving party is entitled to judgment as a matter of law. *Id.*; *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 93, 993 P.2d 259 (2000); CR 56(c).

A party opposing a motion for summary judgment may not rely on speculation or argumentative assertions that unresolved factual issues remain. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Likewise, a party may not rely on having its own affidavits accepted at face value. *Id.* Instead, the nonmoving party must set forth specific facts that sufficiently rebut the moving parties' contentions and disclose that a genuine issue as to a material fact exists. *Id.* Ultimate facts or conclusions of fact are insufficient; conclusory statements of fact will not suffice. *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 359-360, 753 P.2d 517 (1988).

The trial court correctly granted summary judgment on the IIED claims. In order to sustain a claim of intentional infliction of emotional distress, a plaintiff must demonstrate (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) resulting severe emotional distress. *Kloepfel v. Bokor*, 149 Wn.2d 192, 196-197, 66 P.3d 630 (2003). Although these factors typically present

10

factual questions for decision by trial, a trial judge can make an initial determination that

the defendant's actions did not meet the "extremely high" standard of outrageousness.

*Christian v. Tohmeh*, 191 Wn. App. 709, 736, 366 P.3d 16 (2015).

Here, Mr. Frazier's evidence did not establish outrageous behavior by Quick and

the Board of Directors. Quick delivered to Frazier the letter recommending nonrenewal

privately in accordance with the statute, and the board likewise privately convened to

make its determination, which it also delivered by private letter in accordance with the

statute. RCW 28A.405.220( 2) and (5). Complying with the statutory process simply did

not amount to outrageous behavior.

In a similar vein is *Dicomes v. State*, 113 Wn.2d 612, 782 P.2d 1002 (1989).

There an agency fired an employee who complained about other employees. The

employee was terminated via a privately delivered letter, and the agency also responded

to media inquiries about the dismissal. *Id*. at 616, 630. The dismissal of the employee's

claim was upheld, with our court noting that the agency's behavior was not "atrocious" or

"intolerable in civilized society." *Id*. at 630.

Similarly here, neither Quick nor OSD behaved outrageously. The claim properly

was dismissed at summary judgment.

*Pretrial Ruling*

Lastly, we consider Mr. Frazier's complaint that the ruling in limine concerning

the scope of trial effectively was a reconsideration of the original reconsideration of the

summary judgment.  Although we believe he accurately characterizes the effect of the ruling, he has not demonstrated prejudicial harm to his ability to present his case.

While no authority authorizes reconsideration of a ruling on reconsideration, none expressly prohibits such action, either.  Rather, a prudential concern—the need for finality—drives limits on reconsideration.  A court that is always reconsidering itself is deciding nothing.  The judicial system would be stuck in a paralyzing quagmire if all decisions were subject to further consideration.

Nonetheless, that is not truly what happened here.  Although the trial court believed that factual questions precluded summary judgment of the case, that determination did not itself entitle Mr. Frazier to a jury trial on the question of whether a writ should issue.  As we noted in *Petroni*, the constitutional writ was the sole basis for review of the nonrenewal of a provisional teacher.  127 Wn. App. at 726.  It should go without saying that judges, not juries, issue writs.  The determination at summary judgment that factual questions existed concerning whether the board acted arbitrarily or not entitled Mr. Frazier to a trial to the bench on whether a writ should issue.  It did not entitle him to a jury trial on that question.

The trial court also recognized that the remaining tort claims were bound up in the result of the writ claim and were necessarily dependent on it.  It did not err by dismissing those claims once it determined that the board did not act arbitrarily or capriciously.  Although it probably could have dismissed some or all of the remaining tort claims

earlier at summary judgment, its failure to do so until the trial of the writ was completed did not harm Mr. Frazier. In the end, the trial judge got to the factually and legally proper result in light of its evidentiary determinations.

Mr. Frazier failed to demonstrate that he was legally harmed by the rulings in limine at trial. Whether a writ should have issued was a question for the judge, not a question for a jury.

OSD followed the statutorily mandated process for declining to renew a provisional teacher. Because OSD followed the proper process, Mr. Frazier's claims necessarily failed here.

The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.

13